UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
NICOLAS JABBOUR,

                    Plaintiff,                    24-cv-2704 (PKC)

    -against-                                OPINION AND ORDER

BRILLIO, LLC,

                    Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Plaintiff Nicolas Jabbour commenced this action against defendant Brillio, LLC, in the Supreme Court of the State of New York, New York County. Jabbour brings claims against Brillio for breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment principally related to an earnout provision in an agreement for the sale of a business owned by Jabbour. Brillio removed the action to this Court on the basis of diversity jurisdiction and now moves to dismiss the First Amended Complaint for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P. In the alternative, pursuant to the Federal Arbitration Act ("FAA"), Brillio moves to compel arbitration of Jabbour's claims and stay the action.

        For the reasons set forth below, the motion to compel arbitration and stay proceedings is granted. The motion to dismiss plaintiff's allegations is denied without prejudice.

BACKGROUND

        Jabbour initiated this action on March 7, 2024, by filing a complaint against Brillio in the Supreme Court of the State of New York, New York County. (ECF 1-2.) On

April 10, 2024, Brillio removed the action to this Court on the basis of diversity jurisdiction, 28 U.S.C. § 1332.  (ECF 1 ("Notice of Removal").)[1]

In 2013, Jabbour founded Cedrus, LLC, a software development company, as the sole founder and sole member.  (Amend. Compl't ¶¶ 22-23.)  In mid-2021, Jabbour was approached about selling Cedrus.  (Id. ¶ 28.)  Defendant Brillio, a company in the business of digital technology consulting and services, made an offer to purchase Cedrus.  (Id. ¶¶ 28, 30.)

On December 17, 2021, the parties entered into a purchase agreement, pursuant to which Brillio purchased Cedrus (the "Purchase Agreement").  (ECF 17-1.)  The Purchase Agreement provided for payment of $78.4 million (plus or minus certain adjustments) to Jabbour plus a potential earnout payment of a maximum payout of $8 million over the course of two years if Cedrus met certain revenue milestones (the "Earnout Payment").  (Amend. Compl't ¶¶ 32-37.)  To enable Jabbour to work towards the Earnout Payment, Brillio offered Jabbour employment at Brillio with the title of "Vice President." (Id. ¶ 41.)  As part of the closing deliverables of the Purchase Agreement, Jabbour was required to execute Brillio's "customary employment-related agreement and documents (collectively, the 'Employment Agreements')."  (ECF 17-1 at 5, "Recitals.")

Prior to the closing, on December 12, 2021, Brillio sent an "Offer of Employment," which, if accepted, "will be effective as of the closing date of the Transaction . . . ."  (ECF 17-2.)  The offer letter also stated that, "This Offer is contingent upon your agreement to the terms and conditions of this Offer Letter of Employment, as

---

[1] Brillio is a limited liability company whose sole member is Brillio Holdings, Inc.  (Id. ¶ 4.)  Brillio Holdings is incorporated under the laws of Delaware with its principal place of business in Texas.  (Id.)  Jabbour is an U.S. citizen domiciled in the State of New York.  (ECF 33 ¶¶ 3, 6, Jabbour Aff'd.)

well as the below listed documents," which included an arbitration agreement (the "Arbitration Agreement"). (Id.) The offer letter further stated that any disputes " will be settled through binding arbitration in accordance with the Arbitration Agreement (Attached along with this offer)." (Id.) On April 25, 2022, Jabbour electronically signed the Arbitration Agreement. (ECF 25-2.)

In September 2022, nine months after the acquisition of Cedrus, Brillio restructured their operations. (Amend. Compl't ¶ 55.) During this period, Jabbour alleges that Brillio made achievement of the Cedrus revenue milestones "impossible" by diverting Cedrus employees to work on Brillio's accounts, diverting Jabbour from working on Cedrus accounts by changing his title to "US Head of Platform and Product Engineering," and providing antiquated software for tracking employee hours. (Id. ¶ 59.) In February 2022, Jabbour notified Brillio of its alleged breaches. (Id. ¶ 60.) In 2022, Cedrus did not meet the revenue milestones and Jabbour received no portion of the possible Earnout Payment for that year. (Id. ¶¶ 39, 64-66.) In April 2023, Brillio fired Jabbour from his position, preventing Jabbour from contributing or supervising activity that would go towards achieving the 2023 Earnout. (Id. ¶¶ 15, 63.)

Jabbour alleges that Brillio acted in bad faith with the intent to avoid paying the Earnout Payment in breach of the Purchase Agreement. (Id. ¶ 60.) Jabbour brings claims for breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment, and demands $8.3 million in damages on each claim. (Id. ¶ 84.)

Brillio now moves to dismiss the complaint for failure to state a claim and, in the alternative, moves to compel arbitration. Brillio contends that Jabbour is bound by the Arbitration Agreement and that it covers Jabbour's claims in this action. (ECF 25-2.) The

Arbitration Agreement provides that any "disputes arising out of or related to the employment relationship . . . and all other state statutory and common law claims" must be resolved by binding arbitration. (ECF 25-2.) The Arbitration Agreement states in relevant part:

> Arbitration under this Agreement is governed by the Federal Arbitration Act (9 U.S.C. §§ 1 et seq.). This Agreement applies to "BRILLIO LLC" employees (sometimes referred to as "you") and "BRILLIO" . . . and survives the termination of your employment with the Company. Except as otherwise stated in this Agreement, you and the Company agree that any dispute or controversy covered by this Agreement, or arising out of, relating to, or concerning the validity, enforceability, or breach of this Agreement, shall be resolved by binding arbitration . . . .
>
> Except as it otherwise provides, this Agreement also applies, without limitation, to disputes arising out of or related to the employment relationship, compensation, breaks and rest periods, termination, retaliation, discrimination, or harassment . . . and all other state statutory and common law claims.

ECF 25-2.

LEGAL STANDARD

The FAA embodies a national policy favoring arbitration. Nicosia v. Amazon.com, Inc., 834 F.3d 220, 228 (2d Cir. 2016). "Section 2 of the FAA makes agreements to arbitrate 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 336 (2011) (quoting 9 U.S.C. § 2). "Any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration." In re American Express Financial Advisors Securities Litigation, 672 F.3d 113, 117 (2d Cir. 2011). However, as arbitration is a matter of contract, the FAA does not require parties to arbitrate any dispute which they have not agreed. Nicosia, 834 F.3d at 229.

In deciding a motion to compel arbitration, a court must consider "(1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." In re American Express, 672 F.3d at 117.  In considering such a motion, the court applies a "standard similar to that applicable for a motion for summary judgment." Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003).  Therefore, the court must draw all reasonable inferences in favor of the non-moving party and "consider all relevant, admissible evidence submitted by the parties." Nicosia, 834 F.3d at 229.  The party that opposes arbitration "bears the burden of showing the agreement to be inapplicable or invalid." Harrington v. Atlantic Sound Co., Inc., 602 F.3d 113, 124 (2d Cir. 2010).

As "a district court should generally rule on a motion to compel arbitration" before a motion to dismiss, the Court will first address Brillio's motion to compel arbitration. Harris v. TD Ameritrade Inc., 338 F. Sup. 3d 170, 181 (S.D.N.Y. 2018) (Swain, J.).

DISCUSSION

  A.  <u>Whether the Parties Entered a Valid Agreement to Arbitrate.</u>

The question of whether the parties agreed to arbitrate is a question left to the court, unless the parties clearly and unmistakenly provided otherwise. John Hancock Life Insurance, Co. v. Wilson, 254 F.3d 48, 53 (2d Cir. 2001). When determining whether the parties entered into a valid and enforceable agreement to arbitrate, courts look to the relevant state law principles that govern contract formation. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 944, 944 (1995).

The Arbitration Agreement does not specify a governing law. (ECF 25-2.) The parties' briefs on the motion to compel arbitration assume that New York law controls. (ECF 23, 29, & 31.) Therefore, their mutual reliance functions as implied consent and is "sufficient to establish choice of law." Krumme v. WestPoint Stevens Inc., 238 F.3d 133, 138 (2d Cir. 2000). Under New York law, for a contract to be binding, there must be a "'meeting of the minds' and 'a manifestation of mutual assent.'" Starke v. Square Trade, Inc., 913 F.3d 279, 288 (2d Cir. 2019) (citation omitted). Generally, courts consider whether there was an offer and acceptance to determine whether there was a sufficient meeting of the minds to give rise to a binding and enforceable contract. Id.

Brillio has shown that the parties agreed to arbitrate disputes relating to Jabbour's employment. The elements of offer, acceptance, and mutual assent are present. Brillio extended an offer of employment to Jabbour in connection with the purchase of Cedrus. (ECF 17-1, 17-2.) While the Arbitration Agreement was not executed until April 25, 2022, the offer of employment was extended on December 12, 2021, and his employment, if he agreed to the offer letter, would only "be effective as of the closing date of the Transaction" contemplated by the Purchase Agreement. (ECF 17-2 at 1.) The offer of employment was contingent on Jabbour signing various employment agreements, including the Arbitration Agreement. (ECF 17-2 at 2.) Jabbour accepted that offer by reviewing and signing the Arbitration Agreement. (ECF 25-2.) The Arbitration Agreement contains an express and unambiguous arbitration clause. And Jabbour does not allege that his assent to the Arbitration Agreement was procured through fraud, misrepresentation, mistake, or undue influence.

Jabbour argues that there is no valid agreement to arbitrate because the Arbitration Agreement was superseded by the Purchase Agreement's forum-selection clause. Significantly, the Purchase Agreement does not supersede the Arbitration Agreement. Although, the offer of employment dated December 12, 2021, (ECF 17-2) contemplated an Arbitration Agreement, Jabbour did not execute the Arbitration Agreement until April 25, 2022, over four months after the Purchase Agreement was executed on December 17, 2021. (ECF 17-1 at 1, ECF 25-2 at 2); Applied Energetics, Inc. v. NewOak Capital Markets, LLC, 645 F.3d 522, 526 (2d Cir. 2011) ("Under New York law, [i]t is well established that a subsequent contract regarding the same matter will supersede the prior contract"); cf. Goldman, Sachs & Co. v. Golden Empire Schools Financing Authority, 764 F.3d 210, 215 (2d Cir. 2014) (finding an agreement to arbitrate may be "supersede[d] by a later-executed agreement containing a forum-selection clause" if it specifically precludes arbitration).

Further, the Purchase Agreement contains no provision that is inconsistent with the Arbitration Agreement. The Court construes the text of the Purchase Agreement in accordance with Delaware law, as the Purchase Agreement contains a "Governing Law" clause which states that the agreement shall be governed and construed in accordance with "the laws of the State of Delaware." (ECF 17-1 § 11.7.) "Delaware law instructs the court to 'give priority to the parties' intentions as reflected in the four corners of the agreement,' and to 'interpret clear and unambiguous terms according to their ordinary meaning.'" Yeransian v. Markel Corp., CV 16-808-GMS, 2017 WL 3225987, at *6 (D. Del. July 31, 2017) (quoting GMG Capital Investments, LLC v. Athenian Venture Partners I, L.P., 36 A.3d 776, 780 (Del. 2012)).

Under Delaware law, multiple contracts that are "part and parcel of a larger contractual relationship" should be interpreted together within that context. CA, Inc. v. Ingres Corp., 4300-VCS, 2009 WL 4575009, at *47 (Del. Ch. Dec. 7, 2009). The Purchase Agreement states that Jabbour must execute Brillio's employment agreements as a condition of the closing. (ECF 17-1 § 7.1(h) ("At the Closing, the Company and Seller shall deliver . . . . [t]he Employment Agreements, duly executed by Seller . . . .") The definition of "Employment Agreements" includes ". . . customary employment-related agreements and documents." (Id. at 5, "Recitals.") The Arbitration Agreement was a part of the employment agreements sent to Jabbour with the offer letter on December 12, 2021, although Jabbour did not execute it until months later. (ECF 17-2 at 2.) Therefore, the Purchase Agreement does not invalidate the Arbitration Agreement as the Purchase Agreement incorporates employment-related agreements, which include the Arbitration Agreement. Duff v. Innovative Discovery, LLC, 7599-VCP, 2012 WL 6096586, at *12 (Del. Ch. Dec. 7, 2012) ("Delaware law holds that where a contract incorporates another contract by reference, the two contracts will be read together as a single contract.").

The forum-selection clause does not preclude arbitration. The forum-selection clause states that the parties irrevocably consent to the exclusive jurisdiction of state or federal New York courts "in connection with any Relevant Matter." (ECF 17-1 § 11.8.) The clause states in relevant part the following:

> Section 11.8. Jurisdiction. Each of the Parties hereto irrevocably consents to the exclusive jurisdiction and venue of the state or federal courts located in New York County, New York (the "New York Courts") in connection with any Relevant Matter (or, only if the New York Courts decline to accept jurisdiction over a particular matter, any federal court within the State of Delaware).

ECF 17-1 § 11.8.

In the Purchase Agreement, a "Relevant Matter" is defined as "all Actions or other matters that may result from, arise out of, be in connection with or relate to this Agreement . . . ." (ECF 17-1 § 11.7.) "Action" is defined as "any action, claim, . . . [or] arbitration." (ECF 17-1 at 2.) Considering the unambiguous terms, an action to compel arbitration "in connection" with the Purchase Agreement must be brought in either a state or federal court located in New York county. This Court is a permissible forum to compel arbitration of a dispute within the scope of the Arbitration Agreement. JPMorgan Chase Bank, N.A. v. Javice, 22-cv-1621, 2023 WL 4420433, at *3 (D. De. July 10, 2023) (finding that the FAA restricts a court's power to compel arbitration "to the district in which the petition for an order directing such arbitration is filed").

While not fully developed in the parties' submissions, there is a question of whether a schedule to the Purchase Agreement governs dispute resolution rather than the Arbitration Agreement. Schedule 2.3(c) supplements the Earnout Payment provision in section 2.3(c) of the Purchase Agreement. (ECF 17-1 at 22 & 81-89.) It sets forth a time-sensitive dispute resolution procedure for disputes "with respect to the calculation of any [Earnout Payment]." (Id. at 82.) It provides for the resolution of the dispute by an "Accounting Firm." Neither side argues that there was a calculation error. Brillo argues that because Jabbour did not timely invoke the dispute resolution procedure, he is deemed to have accepted Brillo's calculation of the Earnout Payment and this negates the vast majority of his claims.[2] Because the Court's ultimately concludes that it should compel arbitration pursuant to the Arbitration

---

[2] A portion of Jabbour's claim arguably falls outside the Earnout Payment provision but not the Arbitration Agreement. In negotiations leading to the Purchase Agreement, the sum of $600,000 was carved out of the intended purchase price to be paid to Jabbour with the understanding that the $600,000 would be paid by Brillo (rather than Jabbour) to a key employee, Paul Baryski, if but only if, he continued to be employed by Cedrus. It was structured as a payment by Brillo as an inducement for the employee to remain employed by Cedrus. Because the employee was terminated by Brillo and never received $300,000 of this amount, Jabbour argues that he is entitled to be credited back with this amount. (ECF 17 at ¶ 58.) This is a matter that will be left to arbitration.

Agreement, Brillo's argument directed to the failure to timely invoke the dispute resolution provision of schedule 2.3(c) is left to arbitration.

The Court finds that the parties entered into a valid agreement to arbitrate disputes covered by the Arbitration Agreement. Therefore, the Court finds that the first part of the two-part inquiry is met.

B. <u>Scope of the Arbitration Agreement.</u>

The Court must next determine whether Jabbour's claims are within the scope of the Arbitration Agreement. "[A] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate <u>that dispute</u>." <u>Granite Rock Co v. International Brotherhood Of Teamsters</u>, 561 U.S. 287, 297 (2010). To determine an arbitration provision's scope, the Second Circuit has instructed that courts consider, "whether, under ordinary principles of contract interpretation, a particular dispute is covered by the language to which the parties agreed." <u>Local Union 97, International Brotherhood of Electrical Workers, AFL-CIO v. Niagara Mohawk Power Corp.</u>, 67 F.4th 107, 114 (2d Cir. 2023) (per curiam).

Relying on "ordinary principles of contract interpretation," the Court finds that the Arbitration Agreement unambiguously covers Jabbour's claims. The parties' signed agreement states that "disputes arising out of or related to the employment relationship, compensation . . . and all other state statutory and common law claims" shall be resolved by binding arbitration. (ECF 25-2.) Jabbour's claims arise under state common law and, therefore, fit "within the jurisdiction that the parties have assigned to the arbitrator." <u>Arrigo v. Blue Fish Commodities</u>, 408 Fed. App'x 480, 481 (2d Cir. 2011) (summary order); <u>see also</u> <u>Camilo v. Lyft, Inc.</u>, 384 F. Supp. 3d 435, 440 (S.D.N.Y. 2019) (ALC) (finding the

plaintiff's claims of breach of contract and unjust enrichment were within the scope of an arbitration agreement that stated "all . . . common law claims" were subject to arbitration).

Jabbour argues that his claims arise from the Purchase Agreement and are unrelated to his employment relationship with Brillio. When there are multiple contracts, with only some containing an arbitration clause, "courts commonly find that contractual claims founded upon one agreement may still sufficiently relate to another agreement such that the latter agreement's arbitration clause compels arbitration of the entire dispute." Euro Pacific Capital, Inc. v. Bohai Pharmaceuticals Group, Inc., 15-cv-4410 (VM), 2016 WL 297311, at *4 (S.D.N.Y. Jan. 21, 2016). The Arbitration Agreement applies "without limitation to disputes arising out of or related to the employment relationship, compensation, . . . [and] termination." (ECF 25-2.) Jabbour's Amended Complaint alleges that Brillio made the achievement of the Earnout Payment impossible due to employment-related conduct such as diverting Cedrus employees and Jabbour from working on Cedrus Accounts, changing Jabbour's title, and providing antiquated software to track employee hours. (Amend. Compl't ¶ 59.) Jabbour also alleges that he was wrongfully terminated to prevent him from achieving the Earnout Payment. (Id. ¶ 63 (" . . . so Jabbour could not contribute and/or supervise activity that would go towards achieving the Cedrus Revenue milestones/Earnout targets, on April 2023, Brillio, without cause or justification, fired Jabbour . . . .") Therefore, the factual allegations in the Amended Complaint are based on alleged conduct "arising out of or related to" Jabbour's employment relationship with Brillio and his termination. See Edwards v. CVS, 714 F. Supp. 3d 239, 247 (S.D.N.Y. 2024) (CM) (finding that courts should focus on the factual allegations in a complaint when determining whether a particular claim falls within the scope of an arbitration agreement).

As the firing of Jabbour is unambiguously covered by the Arbitration Agreement, and the Amended Complaint alleges that the purpose of the firing was to impair his ability to achieve the targets necessary for the Earnout Payment, the Court finds that the claims presented by Jabbour in this action are subject to the Arbitration Agreement.

CONCLUSION

Brillio's motion to compel arbitration of Jabbour's claims is GRANTED. The motion to dismiss the Amended Complaint is DENIED as moot. This action is STAYED pending a final award in the arbitration. Katz v. Cellco Partnership, 794 F.3d 341, 347 (2d Cir. 2015) ("[T]he FAA mandate[s] a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested."). The parties are directed to advise the Court in writing within thirty (30) days of a final award in the arbitration or other form of resolution of the claims asserted in this action.

The Clerk is requested to terminate the motions at ECF 23 and 26.

SO ORDERED.

P. Kevin Castel
United States District Judge

Date:   March 14, 2025
        New York, New York